# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

Case No. 2:16-cv-00121-SPC

**ALLEN SYSTEMS GROUP, INC.**, a
Delaware corporation,

        Plaintiff,

v.

**AVON PRODUCTS, INC.**, a New York
corporation

        Defendant.

_____/

## FIRST AMENDED COMPLAINT

As and for its First Amended Complaint, Plaintiff Allen Systems Group, Inc. (together

with its predecessor in interest, "ASG") hereby brings this action against Defendant Avon

Products, Inc. (together with its predecessor in interest, "Avon") and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for breach of contract pursuant to the laws of the United

Kingdom based on Avon's misuse of certain proprietary software licensed from ASG.

## THE PARTIES

2.     ASG is a Delaware corporation with principal place of business in Naples,

Florida.

3.     Upon information and belief, Avon is a New York corporation with principal

place of business in New York, New York.

## JURISDICTION AND VENUE

4.      This civil action arises under the contract laws of the United Kingdom.  This Court has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. § 1332 in that there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court has jurisdiction over Avon because, upon information and belief, Avon has purposefully directed its activities toward residents of Florida and otherwise purposefully availed itself of the privileges of conducting activities within Florida, thus invoking the benefits and protections of its laws.  Additionally, Avon is registered to do business in Florida and upon information and belief conducts business in Florida including through the activities of its independent sales agents who reside in the State of Florida including in this District.

6.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c).

## FACTS

7.      Founded in 1986, ASG is a leading provider of enterprise software products, providing companies with solutions for cloud computing, management of business services, job scheduling, data migration, performance management, applications development and content management.

8.      ASG has developed and distributed a variety of software products designed to assist enterprise customers in managing and maintaining their mainframe and distributed computing environments. These software products include, but are not limited to, ASG-Zeke™ Scheduling for z/OS and ASG-Zeke™ Scheduling for VSE (collectively, "ASG-Zeke"); ASG-TMON® for CICS TS for z/OS, ASG-TMON® for DB2, ASG-TMON® for IMS (DBCTL Feature), ASG-TMON® for Web Services, ASG-TMON® for WebSphere® MQ, ASG-

TMON® for z/OS, ASG-TMON® for CICS TS/VSE, ASG-TMON® for CICS/VSE, ASG-TMON® for z/VSE, and SQL Analyzer™ Feature for ASG-TMON/DB2 (collectively, "ASG-TMON"); ASG-ViewDirect®-MVS, ASG-ViewDirect®-MVS - Advanced Laser Printing, ASG-ViewDirect®-MVS - Packet Production, ASG-ViewDirect®-MVS - Remote Job Output, and ASG-ViewDirect®-MVS - VTAM Server (collectively, "ASG-ViewDirect"); ASG-Zack™ VSE ("ASG-Zack"); and ASG-JOB/SCAN® ("ASG-JOB/SCAN").  The ASG-Zeke, ASG-TMON, ASG-ViewDirect, ASG-Zack, and ASG-JOB/SCAN products are at issue in this litigation (the "ASG Products")

9.      Specifically, ASG-Zeke provides an automated job scheduler that facilitates enterprise-wide dynamic schedules, workload balancing and optimization, creation, backup and maintenance of schedules and calendars, efficiently and across multiple locations, operating systems, and users.

10.     ASG-TMON is a software solution used to manage and improve Customer Information Control Systems (CICS) and Virtual Storage Extended ("VSE," an operating system for IBM mainframe computers) systems to reduce and avoid performance issues, manage application usage and performance, and otherwise increase efficiencies of business applications, throughout an enterprise.

11.     ASG-ViewDirect is a software solution that delivers enterprise content management, storage and archiving functions in distributed and mainframe computing environments.  Enterprise customers use ASG-ViewDirect to manage the long-term integrity and availability of all types of records and content.

12.     ASG-Zack provides automated systems operations by monitoring console activity and events continuously. This software independently handles routine events and alerts operators

to situations demanding further attention, allowing operators to concentrate on more pressing tasks.

13.     ASG-JOB/SCAN is a software solution that helps enterprise customers manage mission-critical mainframe applications and reduce or eliminate errors in data center operations.

14.     ASG does not sell its software products to customers.  Rather, customers purchase licenses to the ASG products, either directly from ASG or from ASG's authorized distributors and resellers.  Licenses are product-specific and applicable fees vary depending upon factors including the product at issue and the scope of deployment that is permitted under the applicable license.

15.     As a result of ASG's extensive efforts, the ASG Products are valuable, proprietary products and the software, its structure, sequence and origin are valuable trade secrets of ASG.

16.     Each ASG product licensed by ASG is subject to a software license agreement ("SLA") that governs the terms and conditions under which the licensee may deploy the specific software being licensed.

17.     Software solutions that are licensed for use in a mainframe computing environment frequently are licensed on the basis of the total processing capacity of the mainframe hardware on which the software product is to be installed, commonly measured by million-instructions-per-second ("MIPS").  The total computing capacity of widely available mainframe hardware is publicly available and in many cases published by the hardware manufacturer.  For example, the total processing capacity of many IBM mainframe hardware products is published by IBM, Gartner, Tech News, and other rating services

18.     Software solutions that are licensed for use in a mainframe computing environment may also be licensed not on the basis of the total processing capacity of the entire

mainframe hardware, but rather on the basis of a smaller, partitioned, sub-capacity of the mainframe processor called a Logical Partition ("LPAR").  For software that is licensed on the basis of an LPAR, rather than the total capacity of the entire processor, the sub-capacity of the LPAR or LPARs in which the software is installed will be measured in terms of the MIPS capacity of just the LPAR or LPARs at issue, isolated from the rest of the processor.

19.     On or about September 11, 2006, ASG and Avon's predecessor in interest, Avon Cosmetics Ltd., entered into a Software License Agreement (together with all amendments thereto and product schedules associated therewith, the "2006 SLA").  A true and correct copy of the 2006 SLA, including the applicable Product Schedules and related contract documents, is attached hereto as **Exhibit 1**.[1]

20.     The 2006 SLA states the terms and conditions under which ASG granted to Avon a license to the ASG Products.  Since the parties first entered into the 2006 SLA, that agreement has been used to consolidate and replace prior license agreements and product schedules for all licenses purchased by Avon for ASG software products.

21.     The 2006 SLA specifies the laws of the United Kingdom and Wales as the applicable governing law.  By agreement of the parties, the 2006 SLA and the licenses granted thereunder were later transferred from Avon Cosmetics Ltd. to Avon Products, Inc. on or about March 14, 2012.

22.     Pursuant to the 2006 SLA, Avon licensed the ASG Products for less than the full capacity of the mainframes upon which they deployed the software.  The sub-capacity licenses were to be measured by the total LPAR MIPS applicable to the specific hardware on which each applicable ASG Product was installed.

---

[1] ASG has redacted confidential financial terms from the 2006 SLA and related documents.

23.     The product schedules incorporated into the 2006 SLA provide that Avon may use ASG's software products "provided [Avon] does not exceed" the LPAR MIPS limits for which it is licensed.

24.     The 2006 SLA further provided that if Avon "intend[ed] to increase its capacity or usage of the Licensed Product(s)," Avon "agree[d] to provide ASG with prior written notice of such change and [Avon would] pay an upgrade fee as specified in the applicable Product Schedule(s)."

25.     The 2006 SLA stated that "[t]he [ASG Products] are, and shall at all times remain, the property of ASG and its licensors, and [Avon] shall have no right, title, or interest therein, except as expressly set forth in [the 2006 SLA]."

26.     Pursuant to Product Schedules 3 and 4 to the 2006 SLA, Avon licensed the ASG Products.

27.     Avon also purchased maintenance services in connection with the licensed ASG Products.

28.     The 2006 SLA provides that Avon will furnish to ASG, upon request, a signed statement verifying that Avon's deployment of the ASG Products within Avon's computing environment is in compliance with the 2006 SLA and providing the location, model and serial number of any and all CPUs on which the ASG Products are being utilized, as well as the number of users and MIPS, where applicable.

29.     Beginning in or about February 2015, ASG initiated a license verification review of the ASG software products deployed on Avon's mainframe systems.  This review showed that Avon deployed ASG's products on both z/OS and VSE operating systems on a single Central Processing Unit ("CPU").

30.     The review revealed that Avon had deployed several ASG Products on partitioned CPUs, the capacity of which exceeded the stated sub-capacity LPAR MIPS under the applicable license.

31.     In ensuing discussions between the parties, Avon presented evidence that for its LPARs running the VSE operating system, LPARs were configured in a manner such that the capacity of the LPARs on which certain ASG Products were installed could not exceed the LPAR MIPS sub-capacities specified for each such ASG Product in the 2006 SLA.  ASG accepted this representation and agreed to consider Avon in compliance with regard to its deployments of ASG Products on Avon's LPARs running the VSE operating system upon the condition that the parties use the same measurement approach to the ASG Products installed on Avon's LPARs running the z/OS operation system.

32.     Utilizing the foregoing measurement approach, Avon still has a significant license gap for the ASG-JOB/SCAN, ASG-Zeke, ASG-TMON and ASG-ViewDirect  products as deployed on Avon's three LPARs running the z/OS operating system on its IBM Mainframe CPU (model 2827-410): MVSPROD, MVSDEVL, and MVSTECH.  Specifically, the configuration data reported by Avon for these LPARs indicates the below-identified over-deployments (all numeric measurements are LPAR MIPS):

|  | ASG-JOB/SCAN | ASG-TMON | ASG-Zeke | ASG-ViewDirect |
|---|---|---|---|---|
|  | z/OS Operating System | | | |
| **License Entitlement** | 10 | 500 | 50 | 50 |
| **Configured Capacity Limit Shared by the 3 z/OS LPARS** | 1,601 | | | |
| **License Gap** | (1,591) | (1,101) | (1,551) | (1,551) |

33.     Despite further communications between the parties, Avon has refused to purchase the additional licenses necessary to bring its deployments of the ASG Products within its z/OS operating system into compliance with the 2006 SLA.

34.     The licenses granted under the 2006 SLA are non-assignable and non-transferable, and provide the right for the Client to "use the Licensed Product(s) solely for its own internal use and benefit, and for the benefit of Client's parent company, or any subsidiary, affiliate, company, partnership or other entity controlling or controlled by Client, or under common control by Client and only on the equipment and at the location(s) designated in the attached Product Schedule(s).  For purposes of this Master Agreement, "control" shall be defined as fifty percent (50%) or greater ownership."  (Ex. 1, p. 1, "License Grant".)

35.     Upon information and belief, in a transaction that was announced in December 2015 and finalized in March 2016, Avon Products Inc. divested its North American business into a separate, privately-held company called "New Avon LLC", that is majority-owned and managed by an affiliate of Cerberus Capital Management, L.P.  Upon information and belief

New Avon LLC is not Avon Products, Inc.'s "parent company, or any subsidiary, affiliate, company, partnership or other entity controlling or controlled by [Avon Products, Inc.], or under common control by [Avon Products, Inc.]" such that use of ASG software products by and/or for the benefit of New Avon LLC is or would be permitted under the License Grant of the 2006 SLA.

36.     Avon has indicated, in writing to ASG, that it has used ASG software products for the benefit of New Avon LLC.  Upon information and belief, Avon's use of ASG software products for the benefit of New Avon LLC continues as of the filing date of this Amended Complaint.

37.     ASG's investigation regarding the extent of Avon's over-deployment and other unauthorized use of ASG software products is ongoing.  For example and without limitation, ASG intends to conduct further discovery regarding (i) Avon's deployment of ASG software products; (ii) the capacities of the CPU(s) and partitions thereof on which the ASG software is and has been installed; (iii) the extent to which Avon has used or is using ASG software products for the benefit of New Avon LLC and/or other third parties who are not licensed by ASG; and (iv) the extent to which Avon has permitted or continues to permit unlicensed use of ASG software products by any third party(ies) in connection with the performance of outsourced information technology services.

**FIRST CAUSE OF ACTION**
**(Breach of Contract Under UK Law (2006 SLA))**

38.     ASG repeats and incorporates Paragraphs 1 through 37 inclusive as if set forth verbatim herein.

39.     Avon's licenses to certain of the ASG Products are governed by the 2006 SLA. The 2006 SLA, including the associated Product Schedules, is a valid, enforceable two-party contract.

40.     Avon had possession of and deployed each of the applicable ASG Products.

41.     Avon accepted the terms of the 2006 SLA and ASG's offer to license the ASG Products, along with associated maintenance services, creating contracts for which payment was expected.

42.     The rights to the ASG Products are conferred and controlled by the 2006 SLA and such rights are not within the subject matter of the Copyright Act.  ASG's right to enforce its contractual rights under the 2006 SLA is not equivalent to the exclusive rights under the Copyright Act.

43.     Avon breached and continues to breach independent covenants in the 2006 SLA by failing to pay ASG the required license and maintenance fees for its actual deployment of the ASG Products in Avon's mainframe computing environment, which actual deployments by Avon are outside the scope of and exceed the rights granted to Avon under the 2006 SLA.

44.     Avon further breached and continues to breach independent covenants in the 2006 SLA by increasing the capacity and/or usage of the licensed ASG Products and by failing to notify ASG of such increases and by failing to pay ASG the upgrade and maintenance fees associated with such increased deployments.

45.     In addition, Avon breached and continues to breach independent covenants in the 2006 SLA by using ASG software products for the benefit of New Avon LLC, and/or by permitting New Avon LLC to use ASG software products in connection with its business.

46.     As a direct and proximate result of these and other breaches by Avon of the 2006 SLA, ASG has suffered and is continuing to suffer damages, in an amount to be determined at trial.

47.     ASG's remedy at law is not itself adequate to compensate ASG for injuries inflicted and threatened by Avon.

## RELIEF

WHEREFORE, Plaintiff ASG prays for relief as follows:

A.     For judgment in favor of ASG and against Avon.

B.     For an injunction enjoining and restraining Avon, its officers, directors, agents, employees, representatives, independent sales agents, and all persons acting in concert with them, requiring them to: (a) remove all copies of ASG Products from any computing device, processor, mainframe, network or hardware within their possession, custody or control; and (b) cease engaging in further acts constituting breach of contract.

C.     For an award of ASG's actual damages for Avon's breaches of contract, including but not limited to lost product licensing fees, lost license upgrade fees, lost maintenance fees, lost profits and the full benefit of the contracts that ASG offered and Avon accepted.

D.     For an award of pre-judgment and post-judgment interest on all applicable amounts.

E.     For an award of ASG's costs, including reasonable attorneys' fees as permitted by law or the equitable powers of the Court.

F.     Such other and further relief as the Court may deem equitable and proper.

DATED:  June __, 2016                    Respectfully submitted,

                                    _____

                                      **David K. Friedland**
Florida Bar No. 833479
**Jaime Rich Vining**
Florida Bar No. 30932
**FRIEDLAND VINING, P.A.**
1500 San Remo Ave., Suite 200
Coral Gables, Florida 33146
(305) 777-1720 – telephone
(305) 456-4922 – facsimile
e-mail: dkf@friedlandvining.com
e-mail: jrv@friedlandvining.com

and

**Theresa Wang (*admitted pro hac vice*)**
**Shannon M. Jost (*admitted pro hac vice*)**
**STOKES LAWRENCE, P.S.**
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
(206) 626-6000 – telephone
(206) 464-1496 – facsimile
e-mail: theresa.wang@stokeslaw.com
e-mail: shannon.jost@stokeslaw.com
***Attorneys for Plaintiff Allen Systems Group, Inc.***

# EXHIBIT 1

29/09 '06 14:36 FAX 01536 401092          DATA CENTRE AVON                                    ☑004



# SOFTWARE LICENSE AGREEMENT

This Software License Agreement (this "Master Agreement"), dated and effective as of the 11th day of September 2006, between Allen Systems Group, Inc. ("ASG"), a Delaware corporation, with offices at 1333 Third Avenue South, Naples, Florida 34102, and Avon Cosmetics Ltd ("Client"), a United Kingdom corporation, with offices at Earlstrees Road, Earlstrees Ind Estate, Corby NN17 4AZ, sets forth the terms and conditions under which ASG will license the Licensed Product(s) specified on the attached Product Schedule(s).

## LICENSE GRANT

In accordance with the terms and conditions of this Master Agreement and the attached Product Schedule(s), ASG hereby grants to Client, and Client hereby accepts from ASG a non-assignable, non-exclusive and non-transferable license to use the proprietary software system(s) including programs ("Licensed Product(s)"), technical and other user documentation ("Documentation"), and any associated data and information listed on the attached Product Schedule(s) and for the term provided for on the attached Product Schedule(s). More than one (1) Product Schedule may be incorporated into this Master Agreement and each Product Schedule together with the terms and conditions of this Master Agreement shall constitute a separate Software License Agreement, independent from other Product Schedules incorporated into this Master Agreement. As used in this Master Agreement and in the attached Product Schedule(s), the term this "Agreement" shall refer to each Product Schedule together with the terms and conditions of this Master Agreement, as a separate Software License Agreement and shall refer to one (1) or more, or all, of such Software License Agreements.

Client shall have the right to use the Licensed Product(s) solely for its own internal use and benefit and for the benefit of Client's parent company, or any subsidiary, affiliate, company, partnership, or other entity controlling or controlled by Client, or under common control by Client and only on the equipment and at the location(s) designated in the attached Product Schedule(s). For purposes of this Master Agreement, "control" shall be defined as fifty percent (50%) or greater ownership. Client shall not transfer, sublease, assign the Product Schedule(s) or the Agreement or deliver Licensed Product(s) to other equipment, another location, or another company, or provide or otherwise make Licensed Product(s) available to anyone other than Client's personnel or do processing for the benefit of any entity other than as stated above, unless Client shall have obtained ASG's prior written consent and paid any applicable fees, which shall be no greater than Redacted of the then prevailing license fee of the Licensed Product(s). Should Client intend to increase its capacity or usage of the Licensed Product(s), Client agrees to provide ASG with prior written notice of such change and Client shall pay an upgrade fee as specified in the applicable Product Schedule(s). Client is authorized to use the Licensed Product(s) on a back-up computer, at no additional charge, when the designated computer is temporarily inoperable until operable status is restored and processing on the back-up computer is completed. In addition, Client may install the Licensed Product(s) on a non-production test CPU, for a total of thirty (30) days per annum, solely for testing, provided ASG is given prior written notice of such testing. Client expressly agrees that it shall neither apply nor benefit from the functionality of the Licensed Product(s) under such testing, except in the case of disaster.

## LICENSED MATERIALS

Upon execution of this Agreement, ASG shall furnish Client, either electronically or in hard copy, one (1) full set of the Documentation for each Licensed Product listed on the attached Product Schedule(s). Client may duplicate the Documentation associated with the Licensed Product(s) for internal use only, provided all proprietary markings and legends are retained on the duplicated copies. Client agrees that the Documentation and all copies thereof shall remain the sole property of ASG. Additional copies may be obtained by Client, from ASG, upon payment to ASG of ASG's published price for such materials. Client shall be responsible for obtaining and installing all proper hardware and support software (including operating systems) and for proper installation of and training concerning the Licensed Product(s).

## TERM

Each license granted hereunder shall become effective upon the date specified in the Product Schedule(s) and shall remain in force for the term provided for on the attached Product Schedule(s) unless terminated as provided in this Agreement.

## PAYMENT AND ANNUAL MAINTENANCE FEES

In consideration of the license provided by ASG to Client under the terms and conditions contained herein, Client will pay a license fee to ASG in accordance with the applicable Product Schedule(s). Unless otherwise provided for in the applicable Product Schedule(s), Client must purchase Maintenance Services ("Maintenance") in order to have continued use of the Licensed Product(s) from year to year. The Annual Maintenance Fee shall be as set forth on the applicable Product Schedule(s) and shall be due on the Effective Date of the applicable Product Schedule(s) and each year thereafter. Client shall be invoiced for Maintenance on an annual basis unless Client gives written notice of its intent to discontinue Maintenance no less than ninety (90) days prior to the anniversary of the Effective Date specified in the Product Schedule(s). Should Client elect to cancel Maintenance, Client will lose all rights to receive new releases and support for the Licensed Product(s). Client may reinstate Maintenance by paying all monies that would have been due for Maintenance had Client not canceled Maintenance.

All payments shall be payable by Client upon receipt of an invoice. Invoices not paid within ten (10) days of receipt shall be subject to one and one half percent (1.5%) rate of interest per month (or such lower rate as the highest permissible contract rate under applicable law) which shall be added to any fee(s) due and owing to ASG. The License Fee and the Annual Maintenance Fee do not include any taxes. Unless ASG is provided with a valid tax exemption certificate, Client shall pay or promptly reimburse ASG for all federal, state, local, foreign or other taxes of any kind whatsoever, exclusive only of U.S. taxes based on ASG's net income, whether such taxes are presently or hereafter imposed in relation to the Licensed Product(s).

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC. AND CLIENT
Except under written agreement



29/09 '06 14:37 FAX 01536 401092          DATA CENTRE AVON                              ☐005

## MAINTENANCE SERVICES

Provided the Annual Maintenance Fee has been paid, ASG shall provide Client with all enhancements, improvements, and updates to the Licensed Product(s) which ASG similarly provides or offers to provide to its other clients who have elected to subscribe to Maintenance. ASG will attempt to correct any material errors or malfunctions or other nonconformities in the Licensed Product(s) for the term of this Agreement, provided Client's system, under which the Licensed Product(s) are licensed, and a Client representative, is made readily available to ASG to assist in the diagnosis of the nonconformity. If Client notifies ASG of an error or malfunction which, after investigation by ASG and Client, is determined to have been caused by computer malfunction, or by an enhancement not made by ASG, or by incorrect data or procedures used by Client, ASG may charge Client at ASG's rates then in effect, for all services rendered and costs incurred by ASG in investigating or remedying such non-conformity. All requests for support services shall provide details sufficient to diagnose or reproduce said failure. With respect to the foregoing, any modification or attempted modification of the Licensed Product(s) by Client not in accordance with the user Documentation supplied by ASG, or any failure by Client to implement the current release of the Licensed Product(s) or the release immediately preceding the current release within six (6) months of the current release's availability shall void the obligations of ASG under this section unless Client has obtained prior written authorization from ASG permitting such modification, attempted modifications or failure to implement.

## WARRANTY

ASG represents and warrants that it is the owner or authorized licensor of the Licensed Product(s). ASG further warrants that at the time of delivery of the Licensed Product(s) and for a period of ninety (90) days thereafter, the Licensed Product(s) will conform in all material respects to the Documentation supplied to Client. Provided that written notification is received by ASG within the warranty period, ASG shall, at ASG's sole cost and expense, attempt to correct or replace any material non-conformity in the Licensed Product(s) which ASG determines to be necessary to cause the Licensed Product(s) to substantially conform to its Documentation. Should ASG be unable to bring the Licensed Product(s) into substantial conformance with the Documentation within sixty (60) days after Client's written notification, Client and ASG may agree to extend this time period or, at Client's option, Client may elect to terminate this Agreement for the nonconforming Licensed Product(s) and ASG shall refund the license fees paid by Client related to the nonconforming Licensed Product(s). Upon such termination, Client shall abide by the termination provisions of this Agreement. The foregoing remedy is exclusive and shall constitute Client's sole remedy with respect to any claim relating to breach of warranty. The warranty shall not apply if (i) an item of the Licensed Product(s) was not used in accordance with ASG's instructions; (ii) an item of Licensed Product(s) shall have been altered, modified or converted by Client without ASG's written approval; or (iii) any of Client's equipment shall malfunction causing the defect in Licensed Product(s). **THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

## LIMITATION OF LIABILITY

In the event of a United States copyright, trade secret, or patent infringement claim as a result of the use of Licensed Product(s) under the terms and conditions of this Agreement, under normal use and not in combination with other items, provided that ASG is promptly notified of such claim in writing, ASG shall, at its own expense, defend such claim, or ASG may at its option and in case expense for Client the right to continue using all or part of the Licensed Product(s); (ii) replace Licensed Product(s) with functionally equivalent non-infringing Licensed Product(s); (iii) modify the Licensed Product(s) so as to become non-infringing; or (iv) if none of the foregoing alternatives is reasonably available to ASG using its commercially reasonable efforts, terminate the license for the Licensed Product(s). In the event of termination of the Licensed Product(s) due to such infringement, ASG will refund a prorated portion of the License Fee(s) paid by Client for the Licensed Product(s), reducing the refund by 1/60 for each month following delivery of the Licensed Product(s) prior to injunction or adjudication. This shall constitute the entire liability of ASG with respect to a copyright, trade secret or patent infringement claim.

**EXCEPT WITH RESPECT TO ITS AFOREMENTIONED OBLIGATIONS IN CONNECTION WITH COPYRIGHT, TRADE SECRET, OR PATENT INFRINGEMENT CLAIMS, ASG'S TOTAL LIABILITY TO CLIENT FOR ALL CLAIMS ARISING OUT OF THIS AGREEMENT SHALL BE LIMITED TO THE LICENSE FEE PAID BY CLIENT FOR THE LICENSED PRODUCT GIVING RISE TO THE LIABILITY.**

**ASG SHALL IN NO EVENT BE LIABLE FOR LOSS OF PROFIT, GOODWILL, OR OTHER SPECIAL, INDIRECT OR ANY CONSEQUENTIAL DAMAGES SUFFERED BY CLIENT OR OTHERS IN ANY WAY ATTRIBUTABLE TO CLIENT'S USE OF THE LICENSED PRODUCT(S) OR ANY SERVICES PROVIDED HEREUNDER, AND CLIENT SHALL INDEMNIFY AND HOLD ASG HARMLESS FROM ANY DAMAGES, LIABILITY, COST OR EXPENSE INCURRED BY ASG RELATED TO CLIENT'S USE OF THE LICENSED PRODUCT(S).**

## PROPRIETARY RIGHTS IN LICENSED PRODUCT(S)

The Licensed Product(s) are, and shall at all times remain, the property of ASG and its licensors, and Client shall have no right, title, or interest therein, except as expressly set forth in this Agreement. Client further acknowledges that the Licensed Product(s) contain proprietary and confidential information of ASG (whether or not any portion thereof may be validly copyrighted or patented). Client agrees to keep Licensed Product(s) strictly confidential and will use all reasonable care and take all necessary steps to ensure that no unauthorized persons shall have access to the Licensed Product(s), and Client will take appropriate action, by instruction, agreement or otherwise, with any persons permitted access to the Licensed Product(s), including representatives of the Client(s) to restrict the disclosure, duplication or reproduction of the Licensed Product(s) so as to enable Client to satisfy its obligations hereunder. Client agrees not to reverse compile, disassemble, or otherwise attempt to obtain the source code for Licensed Product(s) except through ASG. Client further agrees that it shall permit ASG to audit the use of the Licensed Product(s) at such times as may be mutually agreed upon.

Client agrees that an enhancement to the Licensed Product(s) developed by ASG, whether or not developed in conjunction with Client's employees or agents, shall be the exclusive property of ASG. Client further agrees that enhanced versions of the Licensed Product(s) do not constitute a program different from the Licensed Product(s) and as such, fall under the terms and conditions of this Agreement.

## NONDISCLOSURE AND CONFIDENTIALITY

During the term of this Agreement, each party may supply to the other confidential information. The confidential information will, during the

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC. AND CLIENT
Except under written agreement

Page 2                                                                                                                JHG
                                                                                                                     SLA 1-20-06



terms of this Agreement and for a period of three (3) years subsequent to the termination or expiration of this Agreement, be kept confidential by the receiving party using the same standard of care that the receiving party uses to protect its own information of a similar nature, and will not be used by the receiving party outside the scope of this Agreement. When disclosed in writing, the confidential information will be identified and labeled as such. Confidential information shall not include any information which: (i) was in the public domain when received, or thereafter enters the public domain through no fault of the receiving party; (ii) is in the receiving party's possession prior to receipt from the disclosing party; (iii) is independently developed by the receiving party without reference to any confidential information of the disclosing party; or (iv) is required to be disclosed by law or regulation or pursuant to a valid court order. The parties agree the confidential information shall remain the property of the original owner. Upon notice from the disclosing party, the receiving party will return to the disclosing party any requested confidential information which is in tangible form, and the receiving party will deliver to the disclosing party (or, where such delivery is not possible, will destroy and certify to the disclosing party that the receiving party has done so), and neither the receiving party nor its employees or representatives will use any of the confidential information for any other purpose whatsoever. Any information not so returned and/or delivered will remain subject to this provision.

### VERIFICATION

Upon ASG's reasonable request, but not more frequently than annually, Client shall furnish ASG with a signed statement verifying that the Licensed Product(s) are being used pursuant to the provisions of this Agreement and shall provide the location, model and serial number of any and all CPU's on which the Licensed Product(s) are being utilized, as well as the number of users and MIPS if appropriate to the Licensed Product(s).

### TERMINATION

This Agreement may be terminated by Client upon sixty (60) days written notice to ASG of a material breach of this Agreement if ASG fails to correct or cure the material breach prior to the expiration of the sixty (60) day period. Upon condition that any monies payable by Client to ASG shall not be affected by termination, ASG may terminate this Agreement upon sixty (60) days prior written notice to Client in the event of Client's material breach of the Agreement, if Client fails to correct or cure the material breach prior to the expiration of the sixty (60) day period. The right of either party to terminate this Agreement shall not be affected in any way by its waiver of or failure to take action with respect to any previous default. Upon termination of this Agreement, Client shall immediately return the Licensed Product(s) and any copies thereof to ASG and shall certify in writing to ASG that Client no longer has any rights to use the Licensed Product(s) and that the original and all copies of the Licensed Product(s) have been returned to ASG. The provisions of this Agreement relating to Warranty, Limitation of Liability, Proprietary Rights in Licensed Product(s), Nondisclosure and Confidentiality, Termination, and General Provisions, will survive and continue in full force and effect notwithstanding the termination or expiration of this Agreement.

### GENERAL PROVISIONS

Any notice required to be sent under this Agreement shall be in writing, delivered by hand or mailed by certified mail, return receipt requested, to the addresses of the parties first set forth on the attached Client Administration Information attachment. Any other notices provided for in this Agreement shall be mailed or shipped as indicated in the appropriate sections of the Client Administration Information attachment.

Neither party shall be responsible for delay or failure in performance resulting from acts beyond the control of such party. Such acts shall include, but not be limited to: an act of God; an act of war; riot; an epidemic; fire; flood or other disaster; an act of government; a strike or lockout; a communication line failure; power failure or failure of the computer equipment on non-ASG developed software.

This Agreement is expressly made subject to any U.S. government laws, regulations, and other restrictions regarding export from the U.S. or re-export of computer software and technology. Client agrees not to export or re-export any Licensed Product(s) or derivative thereof in contradiction to any such applicable export restriction.

This Master Agreement together with the aforementioned Product Schedule(s) contains the entire understanding of the parties with respect to the matter contained herein. There are no promises, covenants or undertakings other than those expressly set forth herein. In the event of a conflict between this Master Agreement and the terms and conditions set forth on the Product Schedule(s), the terms of the Product Schedule(s) shall prevail. ASG specifically disclaims terms and conditions contained in any purchase order or similar document issued by Client in connection with this Agreement. If Client currently has in effect any license for any of ASG's software products, the terms of this Agreement shall apply to any such license. No employee, agent, or representative of ASG has the authority to bind ASG to any oral representation or warranty concerning the Licensed Product(s). No representation or statement not expressly contained in this Agreement will be binding on either party. This Agreement may not be modified except in writing and signed by authorized representatives of ASG and Client. This Agreement shall be governed by and construed in accordance with the laws of England and Wales. The Client's remedies in this Agreement are exclusive. This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their respective successors and assigns as authorized herein.

THIS MASTER AGREEMENT IS HEREBY ACCEPTED AND AGREED TO BY BOTH CLIENT AND ASG.

| Company: | Allen Systems Group, Inc. | Company: | Avon Cosmetics Ltd |
|---|---|---|---|
| By: | _signature_ | By: | _signature_ |
| Name: | Juliette Feuiller-Grosseni | Name: | IAN MAWNSLEY |
| Title: | Senior Contract Administrator | Title: | Infastructure Planning Mgr |
| Date: | 29 Sept 06 | Date: | 29/09/06 |

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC. AND CLIENT
Except under written agreement

JFG
SLA 1-30-06

Worldwide Headquarters
Naples Florida USA / asg.com

Northern Europe
Grosvenor House, Prospect Hill, Grosvenor Road
St. Albans, AL1 3HW
United Kingdom
+44 (0) 1727 736 300
+44 (0) 1727 812 018

29/09  06 14:35 FAX 01536 401092          DATA CENTRE AVON                              ☒002



## ASG
Software Solutions

### PRODUCT SCHEDULE #1

Allen Systems Group, Inc. ("ASG") and Avon Cosmetics Ltd ("Client") agree that this Product Schedule is an integral part of the Software License Agreement dated 11 September 2006.

**LICENSE TYPE:**
Perpetual Single CPU License

**ORIGINAL LICENSED PRODUCTS AND EFFECTIVE DATES:**

Originally licensed perpetually through SouthWest Software Services, Inc. on Contract # 8404604 dated 28 February 1984
ASG-Zeke™ VSE

Originally licensed perpetually through Systems Resources (Midlands) Ltd and Landmark Systems (UK) Ltd on Contract dated 04 June 1984
ASG-TMON™ for CICS/VSE

**EFFECTIVE DATE OF LICENSE UPGRADE:**
30 September 2006

**DESIGNATED EQUIPMENT/SERIAL NUMBER(S):**
Current CPU: IBM 2066-0C1
CPU to be upgraded to an IBM 2066-001 / s/n ...............

**DESIGNATED LOCATION:**
Earlstrees Road
Earlstrees Ind Estate
Corby NN17 4AZ

**FEES AND PAYMENTS:**

Total Fee: Redacted

The Total Fee includes the Upgrade Fee and all of the Annual Maintenance Fees for the Licensed Products for the period 30 September 2006 through 21 June 2010.

Client has agreed to pay the Total Fee as follows:
30 September 2006:          Redacted
22 June 2007:
22 June 2008:
22 June 2009:

The Annual Maintenance Fee for the Licensed Products for the period 22 June 2010 through 21 June 2011 shall be Redacted        Thereafter, the Annual Maintenance Fee for the Licensed Products shall not increase by more than Redacted   per annum over the prior year's Annual Maintenance Fee. This limitation shall not apply to increases in licensed capacity or usage.

The 30 September 2006 fee shall be payable by Client upon execution of this Agreement. The remaining fee(s) shall be payable by Client upon receipt of an invoice.

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC. AND CLIENT
Except under written agreement

JFG
PS MY
1-20-06

29/09 '06 14:35 FAX 01536 401092          DATA CENTRE AVON                    ☑003

ALLEN SYSTEMS GROUP, INC.
PRODUCT SCHEDULE #1
PAGE 2 OF 2

ADDITIONAL TERMS AND CONDITIONS:

Client hereby acknowledges receipt of the above Licensed Products.

The license granted herein is perpetual. Commencing 22 June 2010, and provided all fees due under this Agreement, including any applicable upgrade fees, are paid in full, Client may elect to cancel maintenance services and retain the right to use the Licensed Products in accordance with the terms and conditions of this Agreement. If Client elects to cancel maintenance services, Client (i) shall not be entitled to a refund of any fees which are due and payable under this Agreement or which have been paid, and (ii) shall not be entitled to receive any rights provided for in the Agreement related to maintenance services including Customer Support Desk, error corrections, enhancements, improvements and updates. Client may elect to reinstate maintenance services by paying all maintenance fees that would have been due had Client not canceled maintenance services, in addition to the Maintenance Fee for the then current maintenance period.

Client may utilize the Licensed Products on the above Single CPU at the Designated Location. Should Client use the Licensed Products on a different CPU, Client should provide ASG with prior written notice of this change of CPU and Client shall pay an upgrade fee calculated as the difference between the then prevailing license fee for the new CPU and the then prevailing license fee for the original CPU. Should Client upgrade its CPU, the additional Annual Maintenance Fee shall be calculated as Redacted of the applicable upgrade fee. The additional Annual Maintenance Fee shall be payable at the time of upgrade (prorated from the effective date of the upgrade to the end of the applicable annual term) and for each annual term thereafter.

The Licensed Products shall be governed by this Product Schedule # 1 and this Agreement, and any prior product schedule(s) or agreement(s) relating thereto are hereby superseded.

During the term of this Agreement, Client hereby agrees to serve as a reference for the Licensed Products at times to be mutually agreed upon. Such references will be limited to no more than two (2) per calendar quarter and may, as mutually agreed upon, include activities such as (i) reference calls with or hosting of a site visit with mutually acceptable prospects: (ii) a published "success story" describing the successful partnership with ASG; (iii) the use of Client's name in ASG's marketing activities; or (iv) a favorable reference of ASG to an industry analyst or at an industry conference.

Executed Software License Agreement must be received on or before 30 September 2006. If not received by the aforementioned date, the fee(s) may be subject to additional charges.

THIS SCHEDULE IS HEREBY ACCEPTED AND AGREED TO BY BOTH CLIENT AND ASG.

| | | | |
|---|---|---|---|
| Company: | Allen Systems Group, Inc. | Company: | Avon Cosmetics Ltd |
| Address: | 1333 Third Avenue South | | Earlstrees Road, Earlstrees Ind Estate |
| | Naples, Florida 34102 | | Corby NN17 4AZ |
| By: | _[signature]_ | By: | _[signature]_ |
| Name: | Julliette Feuillet-Grosseni | Name: | IAN MAWDSLEY |
| Title: | Senior Contract Administrator | Title: | Infrastructure Planning Mgr |
| Date: | 29 Sept 06 | Date: | 29/09/06 |

'DESIGNATED LOCATION IS TAX EXEMPT: ☐ YES ☐ NO IF YES, #_____

[logo] _re solutions_

ASG Worldwide Headquarters
Naples Florida USA / asg.com

ASG Northern Europe
Murat, Grosvenor Road
St Albans, AL1 8HW
United Kingdom
+ 44 (0) 1727 736 300
+ 44 (0) 1727 812 018

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC. AND CLIENT
Except under written agreement

JFG
PS MY
1-20-06

13/07 '07 12:48 FAX 01536 401092          DATA CENTRE AVON                    ☒002



# ASG
### Software Solutions

## PRODUCT SCHEDULE #2

Allen Systems Group, Inc. ("ASG") and Avon Cosmetics Ltd("Client") agree that this Product Schedule is an integral part of the Software License Agreement dated 11 September 2006 (the "Agreement"):

**LICENSE TYPE:**
Perpetual License

The Licensed Products consist of the Original Licensed Products and the New Licensed Product listed below

**ORIGINAL LICENSED PRODUCTS AND EFFECTIVE DATES:**
Originally licensed perpetually through Allen Systems Group Inc., on Contract dated 11 September 2006
ASG-Zeke™ VSE
ASG-TMON™ for CICS/VSE
(Upgrade to a single CPU Group G/ Group 70 )

**EFFECTIVE DATE OF NEW LICENSED PRODUCT AND LICENSE UPGRADE:**
02 July 2007

**NEW LICENSED PRODUCT:**
ASG-Zack™ VSE
( Restricted to a Single CPU Group G )

**DESIGNATED EQUIPMENT/GROUP/SERIAL NUMBER(S):**
IBM 2096 J01/Group G/Group 70/ S/N 015C7F
(Upgraded from IBM 2066 001/Group 001)

**DESIGNATED LOCATION:**
Earlstrees Road
Earlstrees Ind Estate
Corby NN17 4AZ
United Kingdom

**FEES AND PAYMENTS:**
Total Fee: Redacted

Notwithstanding the above Original Effective Date and Effective Date of New Licensed Product and License Upgrade, the anniversary for purposes of the annual maintenance term shall be June 22 of each year.

The Total Fee includes the Upgrade Fee for the Original Licensed Products, the License Fee for the New Licensed Product and all of the Annual Maintenance Fees for the Licensed Products for the period 02 July 2007 through 21 June 2011(the "Initial Term").

Client has agreed to pay the Total Fee as follows:

02 July 2007:          Redacted
22 June 2008:
22 June 2009:
22 June 2010:

Client acknowledges that such payments, together with all related rights under this Agreement may be assigned to a third party (the "Assignee") without notice to Client (unless otherwise prohibited by law), and that such payments will be invoiced by, and payments will be made to the Assignee. Client consents to such assignment and agrees that (i) ASG shall continue to remain obligated to Client to provide the Licensed Product(s), warranties, maintenance and support described in this Agreement and (ii) the Assignee (or its assignee) shall not be chargeable with or assume any of the obligations or liabilities of ASG under this Agreement. Client further agrees that this Agreement may not be terminated with respect to its obligation to pay in full to the Assignee (or its assignee) all of the payments described herein (regardless of

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC. AND CLIENT
Except under written agreement

KA
7S MY
1-2-07

13/07 '07 12:49 FAX 01536 401092          DATA CENTRE AVON                    ☒003

ALLEN SYSTEMS GROUP, INC.
PRODUCT SCHEDULE #2
PAGE 2 OF 3

whether or not Client or ASG has exercised its right to terminate this Agreement pursuant to its terms) and that Client's obligation to make all such payments is absolute and unconditional and not subject to any claims or defenses which Client may have against ASG. In the event of the failure by Client to make any such payment due to the Assignee (or its assignee) which (i) continues for five (5) days after the due date shall be subject to interest of the lesser of one and one-half percent (1½%) per month or the maximum rate permitted by applicable law, and (ii) continues for forty-five (45) days after the due date, all remaining amounts lawfully owed shall, to the extent permitted by applicable law, become immediately due and payable. Client acknowledges that (i) Client has received and accepted the Licensed Product(s) covered by this Agreement, (ii) Client has no outstanding claims or defenses against ASG under this Agreement, (iii) the Licensed Product(s) and all other ASG services described in this Agreement are performing in accordance with the standard published product documentation and (iv) without the prior written consent of the Assignee (or its assignee), Client cannot assign its obligation to make the payments described hereunder to any other party.

Should this Agreement be terminated prior to 22 June 2011 by (i) Client or (ii) ASG upon a breach by Client, which breach remains uncured after sixty (60) days notice thereof, of any material term, condition, representation or warranty of this Agreement, any unpaid portion of the Total Fee shall immediately become due and payable hereunder.

The Annual Maintenance Fee for the Licensed Products for the period 22 June 2011 through 21 June 2012 shall be [Redacted] Thereafter, the Annual Maintenance Fee for the Licensed Products shall not increase by more than [Redacted] per annum over the prior year's Annual Maintenance Fee. This limitation shall not apply to increases in licensed capacity or usage.

All fees shall be payable by Client upon receipt of an invoice.

ADDITIONAL TERMS AND CONDITIONS:

Client hereby acknowledges receipt of the above Licensed Products.

The license granted herein is perpetual. Commencing 22 June 2011 and provided all fees due under this Agreement, including any applicable upgrade fees, are paid in full, Client may elect to cancel maintenance services and retain the right to use the Licensed Products in accordance with the terms and conditions of this Agreement. If Client elects to cancel maintenance services, Client (i) shall not be entitled to a refund of any fees which are due and payable under this Agreement or which have been paid, and (ii) shall not be entitled to receive any rights provided for in this Agreement related to maintenance services including Customer Support Desk, error corrections, enhancements, improvements and updates. Client may elect to reinstate maintenance services by paying all maintenance fees that would have been due had Client not cancelled maintenance services, in addition to the Maintenance Fee for the then current maintenance period.

Client may utilize the Licensed Products on a Single CPU within or below Group G / Group 70 at the Designated Location. Should Client upgrade its CPU above Group G / Group 70 Client shall provide ASG with prior written notice of each increase and Client shall pay an upgrade fee calculated as the difference between the then prevailing license fee for the greater CPU Group and the then prevailing license fee for the previous CPU Group. Should Client upgrade its CPU, the additional Annual Maintenance Fee shall be calculated as [Redacted] of the applicable upgrade fee. The additional Annual Maintenance Fee shall be payable at the time of upgrade (prorated from the effective date of the upgrade to the end of the applicable annual term) and for each annual term thereafter.

The Licensed Products shall be governed by this Product Schedule #2 and this Agreement, and any prior product schedule(s) or agreement(s) relating thereto are hereby superseded.

During the term of this Agreement, Client hereby agrees to serve as a reference for the Licensed Products at times to be mutually agreed upon. Such references will be limited to no more than two (2) per calendar quarter and may, as mutually agreed upon, include activities such as (i) reference calls with or hosting of a site visit with mutually acceptable prospects; (ii) a published "success story" describing the successful partnership with ASG; (iii) the use of Client's name in ASG's marketing activities; or (iv) a favorable reference of ASG to an industry analyst or at an industry conference.

Executed Product Schedule must be received on or before 06 July, 2007. If not received by the aforementioned date, the fees may be subject to additional charges.

THIS SCHEDULE IS HEREBY ACCEPTED AND AGREED TO BY BOTH CLIENT AND ASG.

| Company: | Allen Systems Group, Inc. | Company: | Avon Cosmetics Ltd |
|---|---|---|---|
| Address: | 1333 Third Avenue South | | Earlstrees Road, Earlstrees Ind Estate |
| | Naples, Florida 34102, USA | | Corby, NN17 4AZ, United Kingdom |
| By: | _(signature)_ | By: | _(signature)_ |
| Name: | Juliette Feuillet-Dieudonné | Name: | IAN MAWSLEY |
| Title: | Senior Contract Administrator | Title: | INFRASTRUCTURE PLANNING MGR |
| Date: | 13 July 07 | Date: | 13/07/07 |

Florida Headquarters
. Florida USA / asg.com

.rthern Europe
..a, Grosvenor Road
..a, AL1 8HW
.ingdom
.. 1727 736 300
..7 812 018

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC. AND CLIENT
Except under written agreement

KA
FS MV
13-2-07



**ASG**
Software Solutions

## PRODUCT SCHEDULE #3

Allen Systems Group, Inc. ("ASG") and Avon Products, Inc. ("Client") agree that this Product Schedule #4 is an integral part of the Software License Agreement dated September 11, 2006 (the "Agreement").

**LICENSE TYPE:**
Perpetual License

*The Licensed Product(s) consist of the Original Licensed Product(s) and the New Licensed Product(s) listed below*

**ORIGINAL LICENSED PRODUCT(S) AND EFFECTIVE DATE(S):**
__July 2, 1997 originally licensed perpetually on Product Schedule #2 through ASG__
ASG-TMON® for CICS TS/VSE – 408 Sub-Capacity (LPAR) MIPS (upgrade from 204 LPAR MIPS)
ASG-TMON® for CICS/VSE – 408 Sub-Capacity (LPAR) MIPS (upgrade from 204 LPAR MIPS)
ASG-Zack™ VSE – 204 Sub-Capacity (LPAR) MIPS
ASG-Zeke™ Scheduling for VSE – 204 Sub-Capacity (LPAR) MIPS

__June 30, 2010 licensed perpetually on Product Schedule #1 (DSSI SLA dated June 13, 1997) through ASG__
ASG-JOB/SCAN® - 10 Sub-Capacity (LPAR) MIPS
ASG-Zeke™ Scheduling for z/OS - 50 Sub-Capacity (LPAR) MIPS

**EFFECTIVE DATE OF NEW LICENSED PRODUCT(S) AND LICENSE TRANSFER:**
December 21, 2012

**NEW LICENSED PRODUCT(S):**
ASG-TMON® for WebSphere® MQ – 500 Sub-Capacity (LPAR) MIPS

ASG-TMON® for DB2 and SQL Analyzer™ Feature (PACKAGE) - 1
Package Includes:
ASG-TMON® for DB2 – 500 Sub-Capacity (LPAR) MIPS
SQL Analyzer™ Feature for ASG-TMON/DB2 – 500 Sub-Capacity (LPAR) MIPS

ASG-TMON® for IMS (DBCTL Feature) – 500 Sub-Capacity (LPAR) MIPS
ASG-TMON® for Web Services – 500 Sub-Capacity (LPAR) MIPS
ASG-TMON® for z/OS – 500 Sub-Capacity (LPAR) MIPS
ASG-TMON® for z/VSE – 408 Sub-Capacity (LPAR) MIPS

**DESIGNATED EQUIPMENT/SERIAL NUMBER(S):**
IBM 2817 410 / Serial Number 066FF6

**DESIGNATED LOCATION(S):**
Avon Plaza
Rye, New York 10581

**FEES AND PAYMENTS:**
Total Fee Redacted

The Total Fee includes the License Fee for the New Licensed Product(s), the upgrade fees as noted below, and all of the Annual Maintenance Fees ("Maintenance Fees") for the Licensed Products for the period December 21, 2012 through December 20, 2015 (the "Initial Term").

12/19/2012 9:44 AM PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC AND CLIENT
Except under written agreement

12/19/2012 9:44 AM

ALLEN SYSTEMS GROUP, INC.
PRODUCT SCHEDULE #3
PAGE 2 OF 3

FEES AND PAYMENTS (Continued):

Client has agreed to pay the Total Fee as follows:

December 21, 2012          Redacted

December 21, 2013

December 21, 2014

Should this Agreement be terminated prior to December 21, 2015 by (i) Client or (ii) ASG upon a breach by Client, which breach remains uncured after sixty (60) days notice thereof, of any material term, condition, representation or warranty of this Agreement, any unpaid portion of the Total Fee shall immediately become due and payable hereunder.

The Annual Maintenance Fee for the Licensed Product(s) for the period December 21, 2015 through December 20, 2016 shall be Redacted Thereafter, the Annual Maintenance Fee for the Licensed Product(s) shall not increase by more than Redacted per annum over the prior year's Annual Maintenance Fee. This limitation shall not apply to increases in licensed capacity or usage.

All fees shall be payable within forty-five (45) days of receipt of an invoice.

ADDITIONAL TERMS AND CONDITIONS:

Client hereby acknowledges receipt of the above Licensed Product(s).

The license granted herein is perpetual. Commencing December 21, 2015,and provided all fees due under this Agreement, including any applicable upgrade fees, are paid in full, Client may elect to cancel maintenance services and retain the right to use the Licensed Product(s) in accordance with the terms and conditions of this Agreement. If Client elects to cancel maintenance services, Client (i) shall not be entitled to a refund of any fees which are due and payable under this Agreement or which have been paid, and (ii) shall not be entitled to receive any rights provided for in the Agreement related to maintenance services including Customer Support Desk, error corrections, enhancements, improvements and updates. Client may elect to reinstate maintenance services by paying all maintenance fees that would have been due had Client not canceled maintenance services, in addition to the Maintenance Fee for the then current maintenance period.

Client has elected to upgrade the ASG-TMON® for CICS TS/VSE and ASG-TMON® for CICS/VSE Licensed Products from two hundred four (204) Sub-Capacity (LPAR) MIPS to four hundred eight (408) Sub-Capacity (LPAR) MIPS. Client may utilize the Licensed Product(s) on a Single CPU at the Designated Location provided Client does not exceed the LPAR MIPS as stated above. Should Client exceed these LPAR MIPS, Client shall provide ASG with written notice of such increase and Client shall pay an upgrade fee calculated as the difference between the then prevailing license fee for the greater number of LPAR MIPS and the then prevailing license fee for the previous number of LPAR MIPS. Should Client upgrade its LPAR MIPS, the additional Annual Maintenance Fee shall be calculated as Redacted of the applicable upgrade fee. The additional Annual Maintenance Fee shall be payable at the time of upgrade (prorated from the effective date of the upgrade to the end of the applicable annual term) and for each annual term thereafter.

The Licensed Products shall be governed by this Product Schedule #3 and this Agreement, and any prior product schedule(s) or agreement(s) relating thereto are hereby superseded.

Client may utilize both the ASG-TMON® for CICS TS/VSE and ASG-TMON® for CICS/VSE Licensed Products and ASG will support both Licensed Products provided Client remains on maintenance and support services for the ASG-TMON® for CICS TS/VSE Licensed Product.

During the term of this Agreement, Client may agree to serve as a reference for the Licensed Product(s) at times to be mutually agreed upon. Such references may, as mutually agreed upon, include activities such as (i) reference calls about the use of Client's name in ASG's marketing activities.

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC. AND CLIENT
Except under written agreement

12/19/2012 9:56 AM

**ALLEN SYSTEMS GROUP, INC.**
**PRODUCT SCHEDULE #3**
**PAGE 3 OF 3**

ADDITIONAL TERMS AND CONDITIONS (Continued):

Executed Product Schedule #3 must be received on or before December 21, 2012.  If not received by the aforementioned date, the fee(s) may be subject to additional charges.

THIS SCHEDULE IS HEREBY ACCEPTED AND AGREED TO BY BOTH CLIENT AND ASG.

| | | | |
|---|---|---|---|
| Company: | Allen Systems Group, Inc. | Company: | Avon Products, Inc. |
| Address: | 1333 Third Avenue South | | Avon Plaza |
| | Naples, Florida 34102 | | Rye, New York 10581 |
| By: | | By: | |
| Name: | Linda J. Stephenson | Name: | Andrew Torregrossa |
| Title: | Senior Director of Contracting | Title: | VP, IT |
| | | | Enterprise Infrastructure |
| Date: | 12-19-2012 | Date: | 12/19/12 |

'DESIGNATED LOCATION IS TAX EXEMPT: ☐ YES ☐ NO

IF YES, THE TAX EXEMPTION CERTIFICATE MUST BE RETURNED WITH THIS AGREEMENT. IF THE TAX EXEMPTION
CERTIFICATE IS NOT RETURNED WITH THIS AGREEMENT, APPLICABLE TAXES SHALL BE ADDED BY ASG TO ALL
INVOICES SENT TO CLIENT.

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC. AND CLIENT
Except under written agreement



# ASG

### PRODUCT SCHEDULE #4

Allen Systems Group, Inc. ("ASG") and Avon Products, Inc. ("Client") agree that this Product Schedule #4 is an integral part of the Software License Agreement dated September 11, 2006 (the "Agreement"). In the event the provisions of this Product Schedule are inconsistent with the provisions of the Agreement, the provisions of this Product Schedule will govern and the inconsistent provision of the Agreement shall be deemed amended accordingly. All other terms and conditions of the Agreement are confirmed and ratified and remain in full force and effect.

**LICENSE TYPE:**
Term License

*The Licensed Product(s) consist of the Original Licensed Product(s) and the New Licensed Product(s) listed below*

**ORIGINAL LICENSED PRODUCT(S) AND EFFECTIVE DATE:**
January 30, 2009 licensed on a term license through ASG

ASG-DocumentDirect® - Core
ASG-DocumentDirect® - Annotations – 100 Sessions
ASG-DocumentDirect® - z/OS Server Access – 100 Sessions

ASG-DocumentDirect® for the Internet-NT – Single (1) Server
ASG-DocumentDirect® for the Internet-NT – Annotations – 100 Sessions
ASG-DocumentDirect® for the Internet-NT – e-Search & View – 100 Sessions
ASG-DocumentDirect® for the Internet-NT – z/OS Server Access – 100 Sessions

50 Sub Capacity MIPS (LPAR) / Single CPU / Single Site / Sub Capacity
CPU IBM 2827-410/Serial Number 020075BB7
ASG-ViewDirect® - MVS – Core
ASG-ViewDirect® - MVS – Packet Production
ASG-ViewDirect® - MVS – Remote Job Output
ASG-ViewDirect® - MVS – VTAM Server – 100 Sessions

**EFFECTIVE DATE OF NEW LICENSED PRODUCTS AND LICENSE RENEWAL:**
June 21, 2014

**NEW LICENSED PRODUCTS:**

ASG-DocumentDirect® for the Internet-NT - ABSNET Integration – 1 Server
ASG-ViewDirect®-ABS – Core
ASG-ViewDirect®-ABS - AFP – 100 Sessions
ASG-ViewDirect®-ABS - Annotations – 100 Sessions
ASG-ViewDirect®-ABS - Control Total Balancing – 1 Server

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC AND CLIENT
Except under written agreement

**ALLEN SYSTEMS GROUP, INC.**
**PRODUCT SCHEDULE #4**
**PAGE 2 OF 3**

**NEW LICENSED PRODUCTS (Continued):**

ASG-ViewDirect®-ABS - Modeler/Publisher - 100 Sessions
ASG-ViewDirect®-ABS - Network Server Access - 100 Sessions
ASG-ViewDirect®-ABS - ViewDirect API for JAVA - 100 Sessions
ASG-ViewDirect®-ABS - Web Interface – 1 Server
ASG-ViewDirect®-ABS - z/OS Server Access - 100 Sessions

**DESIGNATED EQUIPMENT/SERIAL NUMBER(S):**
CPU IBM 2827-410/Serial Number 020075BB7

**DESIGNATED LOCATION(S):**
Avon Plaza
Rye, New York 10581

**FEES AND PAYMENTS:**
Total Fee: Redacted

The Total Fee includes the License Fee for the Licensed Products for the period June 21, 2014 through June 20, 2017 (the "Term"), and all of the Annual Maintenance Fees ("Maintenance Fees") for the period June 21, 2014 through June 20, 2015.

Client has agreed to pay the Total Fee as follows:

| | | |
|---|---|---|
| June 21, 2014 | License Fee: | Redacted |
| | Maintenance Fee: | |
| | Total: | |
| June 21, 2015 | License Fee: | |
| June 21, 2016 | License Fee: | |

Should Client elect to purchase maintenance services commencing June 21, 2015, and further provided there are no increases in capacity or usage, the Maintenance Fee shall be Redacted annually through the remainder of the Term.

The Total Fee shall be payable by Client within forty-five (45) days of receipt of an invoice.

**ADDITIONAL TERMS AND CONDITIONS:**

Client hereby acknowledges receipt of the above Licensed Product(s).

The license granted is for a term commencing June 21, 2014 through June 20, 2017. Commencing June 21, 2015, and provided all fees due under this Agreement, including any applicable upgrade fees, are paid in full, Client may elect to cancel maintenance services for the remainder of the Term and retain the right to use the Licensed Product(s) in accordance with the terms and conditions of this Agreement. If Client elects to cancel maintenance services, Client (i) shall not be entitled to a refund of any fees which are due and payable under this Agreement or which have been paid, and (ii) shall not be entitled to receive any rights provided for in the Agreement related to maintenance services including Customer Support Desk, error corrections, enhancements, improvements and updates. Client may elect to reinstate maintenance services by paying all maintenance fees that would have been due had Client not canceled maintenance services, in addition to the Maintenance Fee for the then current maintenance period.

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC. AND CLIENT
Except under written agreement

LJS
PS MY
2-1-2014

9/17/2014 9:49 AM9/16/2014 3:59 PM

ALLEN SYSTEMS GROUP, INC.
PRODUCT SCHEDULE #4
PAGE 3 OF 3

**ADDITIONAL TERMS AND CONDITIONS (Continued):**

Client may utilize the ASG-ViewDirect® MVS Licensed Product(s) on a Single CPU at the Designated Location provided Client does not exceed fifty (50) sub-capacity MIPS (LPAR). Should Client exceed 50 sub-capacity MIPS (LPAR), Client shall provide ASG with prior written notice of such increase and Client shall pay an upgrade fee calculated as the difference between the then prevailing license fee for the greater number of MIPS (LPAR) and the then prevailing license fee for the previous number of MIPS (LPAR). Should Client upgrade its MIPS (LPAR), the additional Annual Maintenance Fee shall be calculated as Redacted                     of the applicable upgrade fee. The additional Annual Maintenance Fee shall be payable at the time of upgrade (prorated from the effective date of the upgrade to the end of the applicable annual term) and for each annual term thereafter.

The Licensed Products shall be governed by this Product Schedule #4 and this Agreement, and any prior product schedule(s) or agreement(s) relating thereto are hereby superseded.

The Licensed Products shall be limited in their application use for processing and viewing of content for Client's sales and marketing, finance, accounting employees, and any third parties using the Licensed Products on Client's behalf only.

At the end of the Term and provided Client renews the Licensed Products for another three (3) year term at the capacities as listed herein, the total License Fee and Maintenance Fees shall not increase by more than Redacted over the fees as listed herein.

Client agrees that ASG shall not pay any Client fees, including but not limited to bill-back, charge-back, registration, enrollment, buying, selling, bidding and/or other Client administrative fees. Client also agrees that ASG shall not pay any fees charged by a third party that Client has selected to handle Client's invoicing, purchase orders, payment, etc. Should ASG pay any of the aforementioned fees, Client agrees that ASG shall invoice such fees to Client.

Executed Product Schedule #4 must be received on or before June 20, 2014. If not received by the aforementioned date, the fee(s) may be subject to additional charges.

THIS SCHEDULE IS HEREBY ACCEPTED AND AGREED TO BY BOTH CLIENT AND ASG.

| | | | |
|---|---|---|---|
| Company: | Allen Systems Group, Inc. | Company: | Avon Products, Inc. |
| Address: | 1333 Third Avenue South | | Avon Plaza |
| | Naples, Florida 34102 | | Rye, New York 10581 |
| By: | _Linda J. Stephenson_ _2014.06.18 08:37:05 -04'00'_ | By: | _Susan Liddie_ |
| Name: | Linda J. Stephenson | Name: | Susan Liddie |
| Title: | Senior Director of Contracting | Title: | Vice President, IT |
| Date: | June 18, 2014 | Date: | 6/17/14 |

*DESIGNATED LOCATION IS TAX EXEMPT: ☑ YES ☐ NO

IF YES, THE TAX EXEMPTION CERTIFICATE MUST BE RETURNED WITH THIS AGREEMENT. IF THE TAX EXEMPTION CERTIFICATE IS NOT RETURNED WITH THIS AGREEMENT, APPLICABLE TAXES SHALL BE ADDED BY ASG TO ALL INVOICES SENT TO CLIENT.

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC  AND CLIENT
Except under written agreement

LJS
PS MY
2-1-2014

6/17/2014 9:49 AM/6/16/2014 3:59 PM



# ASG

**AMENDMENT #1 TO
PRODUCT SCHEDULE #4**

---

This Amendment #1 to Product Schedule #4 is entered into this 29th day of July 2014, by and between Allen Systems Group, Inc. ("ASG") and Avon Products, Inc. ("Client"), and becomes part of the Software License Agreement ("Agreement") between the parties dated September 11, 2006.  In the event the provisions of this Amendment #1 are inconsistent with the provisions of Product Schedule #4, the provisions of this Amendment will govern and the inconsistent provision of the Product Schedule shall be deemed amended accordingly.  All other terms and conditions of the Agreement and Product Schedule #4 are confirmed and ratified and remain in full force and effect.


**NEW LICENSED PRODUCTS:**

The following New Licensed Product shall be added:

ASG-ViewDirect®-MVS – Advanced Laser Printing


**ADDITIONAL TERMS AND CONDITIONS:**

The following sentence shall be added:

In order to have continued use of the ASG-ViewDirect®-MVS – Advanced Laser Printing Licensed Product, Client must be current on the payment of maintenance and support fees for all other New Licensed Products as listed herein.


No further fees are due and payable by Client to ASG as a result of this Amendment.

THIS AMENDMENT #1 TO PRODUCT SCHEDULE #4 IS ACCEPTABLE TO BOTH CLIENT AND ASG.

| | | | |
|---|---|---|---|
| Company: | Allen Systems Group, Inc. | Company: | Avon Products, Inc. |
| Address: | 708 Goodlette Road North | | Avon Plaza |
| | Naples, Florida  34102 | | Rye, New York 10581 |
| By: | *Linda J. Stephenson* | By: | |
| Name: | Linda J. Stephenson | Name: | *Yang Ey* |
| Title: | Senior Director of Contracting | Title: | *Vice President, IT* |
| Date: | September 19, 2014 | Date: | |

PROPRIETARY INFORMATION
Not for use or disclosure outside
ALLEN SYSTEMS GROUP, INC. AND CLIENT

LJS
2/1/2014



**ASG**
Software Solutions
*Beyond BSM™*

*CORBY Additional MIPS & Rye Migration.*
*OK to PAY*
*3-15-12*

Thursday, March 14, 2012

Avon Cosmetics Ltd
ATTN: Heather Mosley
Avon Plaza
Rye, NY 10581

Dear Heather:

Our records indicate that on 04/01/2012, Avon Cosmetics Ltd (currently located at Earlstrees Road, Earlstrees Ind Estate, Corby, NN17 4AZ relocating to Avon Plaza, Rye, NY 1081 on 04/01/2012) will migrate from an IBM 2098 O01 Group 70 / H Single CPU Based License Stand Alone CPU to an IBM 2817 410 restricted to 204 LPAR MIPS Stand Alone CPU at the site listed above. In accordance with the terms of your Software License Agreement ("Agreement"), the costs associated with this upgrade for the software product(s) listed below are calculated as follows:

ASG-TMON® for CICS/VSE
To:     IBM 2817 410 restricted to 204 LPAR MIPS
From:   2098 O01 Group 70 / H
Upgrade Fee:
Onetime Only <sup>Redacted</sup> Discount:
Revised Upgrade Fee:

Pro-rated maintenance fees for the period 04/01/12 – 06/21/12:

ASG-Zack™ VSE
To:     IBM 2817 410 restricted to 204 LPAR MIPS
From:   2098 O01 Group 70 / H
Upgrade Fee:                                                    **Redacted**
Onetime Only <sup>Redacted</sup> Discount:
Revised Upgrade Fee:

Pro-rated maintenance fees for the period 04/01/12 – 06/21/12:

ASG-Zeke™ Scheduling for VSE
To:     IBM 2817 410 restricted to 204 LPAR MIPS
From:   2098 O01 Group 70 / H
Upgrade Fee:
Onetime Only <sup>Redacted</sup> Discount:
Revised Upgrade Fee:

Pro-rated maintenance fees for the period 04/01/12 – 06/21/12:

**Total Upgrade Fees:**
**Total Pro-rated Fees:**

* Prices do not include any applicable sales or use taxes. Please note that the onetime only <sup>Redacted</sup> discount is valid if and only if ASG receives the signed letter no later than the close of business on or before Wednesday,
                                                                    Redacted

www.asg.com
ASG provides software solutions to over 85 percent of the world's largest companies. Through its comprehensive Business Service Management (BSM) solution, Business Service Platform™, ASG is an established BSM provider. ASG enables clients to reduce costs, enhance customer service, meet business objectives, and truly go beyond BSM.

Megan A. Wetzstein | Voice: 303.482.4122  Facsimile 239.213.3731 | megan.wetzstein@asg.com
3900 South Wadsworth Boulevard, Suite 800, Lakewood, CO 80235

March 28, 2012. If ASG does not receive the signed letter by this date the onetime only Redacted discount becomes null and void and the upgrade fee reverts back to the original total onetime cost of Redacted

This letter is generated to inform your organization of the costs associated with the above referenced transaction(s).  Please sign and fax back to my attention at 239.213.3731. This letter will form a part of the Agreement and in the event of a conflict between the terms of this letter and the terms of your existing Agreement; the terms of this letter shall prevail for the duration of above mentioned maintenance period.  All other terms of your Agreement shall remain unchanged. However, if ASG does not receive a countersigned letter; we reserve the right to generate an invoice for the contractual owed amounts listed above and mail to your attention; unless ASG received written communication disputing this on or before the above referenced effective date(s).

ASG requests that CPU changes and/or additions be reported to upgrades@ASG.com at least thirty days prior to the effective date of such change to ensure proper administration.

Sincerely,

Megan A. Wetzstein
Enterprise Account Services
ASG Software Solutions

Signature: _____  Avon Cosmetics Ltd

Date: _____  3/20/12

Print Name: _____ ANDREW TORREGROSSA

www.asg.com

ASG provides software solutions to over 85 percent of the world's largest companies. Through its comprehensive Business Service Management (BSM) solution, Business Service Platform™, ASG is an established BSM provider. ASG enables clients to reduce costs, enhance customer service, meet business objectives, and truly go beyond BSM.

Megan A. Wetzstein | Voice: 303.482.4122 Facsimile 239.213.3731 | megan.wetzstein@asg.com
3900 South Wadsworth Boulevard, Suite 800, Lakewood, CO 80235

Page 2 of 2

www.asg.com