UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALLEN SYSTEMS GROUP, INC., a
Delaware corporation

    Plaintiff,

v.            Case No:   2:16-cv-121-FtM-38MRM

AVON PRODUCTS, INC.,

    Defendant.

_____/

## <u>ORDER</u>[1]

  This matter comes before the Court on Defendant, Avon Products, Inc.'s ("Avon")

Motion to Dismiss the First Amended Complaint (Doc. #39) filed on July 20, 2016.[2]

Plaintiff Allen Systems Group, Inc. ("ASG") filed its Memorandum in Opposition on July

25, 2016.[3]  (Doc. #40).  Thus, the matter is ripe for the Court's review.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] The Court accepts Avon's request to incorporate the arguments in its initial Motion to Dismiss (Doc. #10) into its current Motion.  (Doc. #39 at 2).  That said, the Court denies Avon's request to incorporate its Reply to ASG's original Memorandum in Opposition (Doc. #25) because no leave has been granted to file a reply for the currently pending dispute.  Similarly, because they were explicitly filed in support of Avon's Reply (Doc. #25), the Court will not consider the declarations of M. Brent Byars, Christine Addonizio, and Ian Mawdsley (Docs. #26, #27, #28).

[3] The Court accepts ASG's request to incorporate the arguments from its initial Memorandum in Opposition (Doc. #18) into its current responsive memorandum.  (Doc. #40 at 1).

## I.      BACKGROUND

This case centers on the alleged breach of a contract between two corporations. ASG is incorporated in Delaware and maintains a principle place of business in Naples, Florida.  (Doc. #37 at 1).   Avon is incorporated in New York and maintains a principle place of business there.  (Doc. #37 at 1).   ASG licenses software products that enable technological solutions for cloud computing, management of business services, job scheduling, data migration, performance management, applications development and content management.  (Doc. #37 at 2).   Each of ASG's products contain elements it regards as trade secrets.  (Doc. #37 at 4).   In a mainframe computing environment, ASG software may be licensed for use on the basis of either (i) the entire mainframe hardware or (ii) a smaller, partitioned, sub-capacity of the mainframe process (termed "Logical Partition" or "LPAR").  (Doc. #37 at 4-5).

On September 11, 2006, ASG entered into a Software License Agreement ("SLA") with Avon's predecessor, Avon Cosmetics Ltd.  (Doc. #1-1).   The SLA and licenses granted thereunder were then transferred from Avon Cosmetics Ltd. to Avon in 2012. (Doc. #37 at 5).   Substantively, the SLA granted Avon a defined LPAR, and provided that disputes involving the SLA would be governed by the laws of England and Wales.  (Doc. #37 at 5-6).   It also maintained that if Avon wished to increase its LPAR, it would first need to give ASG prior written notice and pay an upgrade fee.  (Doc. #37 at 6).

In February of 2015, ASG conducted a "license verification review" of software licensed to Avon.  (Doc. #37 at 6).   The review revealed that Avon exceeded the limits of its LPAR as per the SLA.  (Doc. #37 at 7).   Since the review, Avon has refused to purchase any additional licenses that would bring it into compliance with the SLA.  (Doc. #37 at 8).

In February of 2016, ASG filed its Complaint against Avon, alleging that Avon's use of ASG products was in excess of its brokered-for LPAR, and therefore constituted a breach of contract that should be adjudicated under the laws of the United Kingdom. (Doc. #1).  After Avon filed a Motion to Dismiss (Doc. #10), ASG sought leave to file a First Amended Complaint.  (Doc. #35).  Pursuant to the Court's grant of leave, ASG filed its First Amended Complaint on June 30, 2016, again alleging breach of contract.  (Doc. #37 at 9-11).  In addition to its previous claim that Avon exceeded its allotted LPAR, ASG alleges that Avon divested its North American business into a separate, privately-held company called New Avon LLC in March of 2016, and that although ASG's software licenses are non-assignable, Avon used them for the benefit of New Avon LLC.  (Doc. #37 at 8-9).  ASG argues that this is a ground for breach of contract as well.  (Doc. #37 at 10).

Shortly after the First Amended Complaint was filed, Avon again moved to dismiss for lack of personal jurisdiction and improper venue.  (Doc. #39).  Alternatively, Avon requests that the case be transferred to the United States District Court for the Southern District of New York, where it contends there is proper jurisdiction.  (Doc. #39 at 2).

## II.    LEGAL STANDARD

The existence of personal jurisdiction is a question of law.  *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir.2010).  "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements."  *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir.2008).  A court is obligated to dismiss an action against a defendant over which it has

no personal jurisdiction.  *See Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 n. 6 (11th Cir.1999)*.  When bringing an action against a foreign defendant, a plaintiff bears the initial burden of "alleg[ing] sufficient facts to make out a prima facie case of jurisdiction." *Id. at 1214*.  Where this occurs, a defendant may raise a meritorious challenge to plaintiff's assertions through "affidavits, documents or testimony[.]" *Internet Sols. Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009), certified question answered, 39 So. 3d 1201 (Fla. 2010)*.  If the defendant does so, the burden then moves back to the plaintiff to rebut defendant's claims through "affidavits, documents or testimony[.]" *Id*.

If a court elects to decide a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing or oral argument, a plaintiff need only establish a prima facie case for personal jurisdiction over the nonresident defendant.  *See Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990)*.  This occurs when a plaintiff presents evidence to survive a motion for directed verdict.  *Thomas v. Brown, 504 F. App'x 845, 847 (11th Cir. 2013)*.  Notably, "[t]he district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara, 916 F.2d at 1514*.  "[W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Id*.

Operationally, the Court employs "a two-step inquiry" determining "whether the exercise of personal jurisdiction over a non-resident defendant is proper." *Thomas, 504 F. App'x at 847*.  First, the Court determines "whether the exercise of personal jurisdiction would be appropriate under the forum state's long-arm statute." *Id*.  Then, if that analysis yields an affirmative answer, the Court examines whether the exercise of jurisdiction satisfies the Due Process Clause of the Fourteenth Amendment.  *Id*.

### III.    DISCUSSION[4]

### A.    FLORIDA'S LONG-ARM STATUTE

Florida's long-arm statute lists a number of circumstances wherein a non-resident defendant submits itself to jurisdiction.  *See* Fla. Stat. §§ 48.193(1)(a).  Interpretation of the statute "is to be strictly construed."  *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).  "If the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction-generating event."  *Thomas*, 504 F. App'x at 847.

ASG argues that jurisdiction is proper pursuant to Florida's long-arm statute, which includes in pertinent part:

> (1)(a)  A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1.      Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> …
>
> 6.      Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> a.      The defendant was engaged in solicitation or service activities within this state; or

---

[4] The Court notes that, other than challenging ASG's allegation that it is a Delaware company through Affidavit (Doc. #10-1), Avon has not presented considerable affidavits, documents or testimony disputing ASG's allegations in the First Amended Complaint.  Because it has not done so, all of ASG's allegations in the First Amended Complaint, save as pertains to Avon's state of incorporation, will be accepted as true. *Madara, 916 F.2d at 1514*.

      b.     Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

…

      7.     Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla. Stat. §§ 48.193(1)(a)(1), (6)(a)-(b), (7).  The Court will address each of these provisions in turn.

### 1. CARRYING ON A BUSINESS VENTURE IN FLORIDA

Pursuant to Florida Statute § 48.193(1)(a)(1), a defendant is subject to personal jurisdiction if it operates, conducts, engages in, or carries on a business in Florida.  A defendant "carries on business" within the meaning of the statute where its collective activities show a general course of business activity for pecuniary benefit in Florida.  *See Dinsmore v. Martin Blumenthal Assocs., Inc.*, 314 So. 2d 561, 564 (Fla. 1975).

ASG alleges that Avon is "carrying on a business" in Florida because it has a Florida business license, at least three dozen sales representatives in this district, and hundreds of sales representatives elsewhere in the State.  (Doc. #18 at 6).  And, while ASG cannot pinpoint exact information, it believes that Avon has a substantial amount of product sales, sales representatives, and customers in Florida—an amount that exceeds *de minimis*.  (Doc. #18 at 6-8).

Avon does not dispute ASG's factual allegations, but instead contends that the in-State activities that ASG mentions do not support personal jurisdiction because they do not relate to, or give rise to, the claims raised in the Amended Complaint.  (Doc. #10 at 6).  Specifically, Avon argues that the sole claim against it concerns the breach of the

SLA, which is governed by the laws of England and Wales, and that the conduct giving rise to ASG's claim occurred in New York.  (Doc. #10 at 6-7).  Thus, Avon argues that even if ASG's claims are true, they do not relate to conduct in Florida.

Parsing the arguments, it is first clear that Avon has failed to present "affidavits, documents or testimony" that indicate it utilizes the ASG software in New York.  See *Internet Sols. Corp.*, 557 F.3d at 1295.  While it is true that Avon has presented evidence that it is headquartered in New York, the actual usage of ASG software is a discrete element, and one that Avon relies on to rebut the existence of personal jurisdiction.  Avon cannot bootstrap its arguments regarding physical software usage to evidence of the company's incorporation.  *See Id.*

 Even so, neither can ASG successfully tether personal jurisdiction under Florida's long-arm statute to allegations that Avon carries on business in the State.  While Avon may maintain a broad base of sales representatives in Florida that purchase and sell its products to end-consumers, this presence does not relate to the claims in the First Amended Complaint, which hinge on proper compensation for usage of ASG software. *See* Fla. Stat. §§ 48.193(1)(a).  Likewise, Avon's contacts with Florida that are germane to the allegations in the First Amended Complaint do not rise to the level of a general course of business.  Consequently, Avon's contacts with Florida in relation to the SLA do not satisfy the "doing business" requirement of Florida's long-arm statute, and ASG's instant theory of jurisdiction is inconsistent with Florida law.

## 2.  CAUSING INJURY IN FLORIDA

Turning to the requirements of Florida Statute § 48.193(1)(a)(6)(a)-(b), the Court analyzes whether Avon caused injury that arose from an act or omission within Florida,

either through (i) "solicitation or service activities within [the] state" or (ii) "[p]roducts, materials, or things processed, serviced, or manufactured by [Avon] [that] were used or consumed within [Florida] in the ordinary course of commerce, trade or use".

ASG alleges in the First Amended Complaint that its principle place of business is in Florida, that Avon contracted with it, and that Avon breached the contract.  Furthermore, ASG argues that because Avon knowingly and intentionally contracted to acquire licenses and related services in the SLA, it knew damages resulting from breach of contract would be felt in Florida, where ASG is located.  (Doc. #18 at 9).  This is not the standard for long-arm jurisdiction under Florida Statute § 48.193(1)(a)(6)(a)-(b).  Instead, Florida courts have been consistent that this subsection only applies to personal injury or property damage, and thus that "[m]ere allegations of economic damage will simply not suffice." *Identigene, Inc. v. Goff*, 774 So. 2d 48, 49 (Fla. 2d DCA 2000) (citing *Aetna Life & Casualty Co. v. Therm–O–Disc, Inc.*, 511 So.2d 992, 993-94 (Fla.1987)).  Because ASG seeks damages arising from breach of contract, rather than personal injury or property damage, jurisdiction does not exist under this subsection of Florida's long-arm statute.

### 3.  FAILURE TO PERFORM ACTS IN FLORIDA

Finally, under Florida Statute § 48.193(1)(a)(7), the Court analyzes whether Avon failed to perform acts required by contract to be done in Florida.  Notably, "[f]ailure to pay a contractual debt where payment is due to be made in Florida is sufficient to satisfy Florida's long-arm provision that refers to contractual acts 'required' to be performed in Florida." *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 643 (Fla. 4th DCA 2013).

This is the crux of ASG's claim in the First Amended Complaint.  Avon attempts to rebut jurisdiction under Florida's long-arm statute by arguing that the alleged actions that

violated the SLA took place in New York, and not Florida, and thus that the exercise of personal jurisdiction would be improper here.  (Doc. #10 at 2).  As has been mentioned, because Avon does not support this argument with requisite evidence, it cannot substantively challenge the allegations in the First Amended Complaint.  Even if it could, this is not the relevant inquiry.   Instead, as the long-arm statute clearly states, the pertinent standard relates to acts "required by [a] contract to be performed in [Florida.]" Fla. Stat. § 48.193(1)(a)(7).  In this case, this pertains to payments for usage of ASG software.  To this end, ASG has alleged Avon violated the SLA when it failed to make payments for excessive and unpermitted usage.  (Doc. #37 at 9-11).  ASG argues that these allegations are sufficient to satisfy Florida's long-arm statute because it is headquartered in Florida and payments pursuant to the SLA were to be made there. (Doc. #18 at 6).   The Court agrees.  *See Sendtec, Inc. v. Cosmetique, Inc.*, No. 807CV1643T24TGW, 2008 WL 660297, at *3 (M.D. Fla. Mar. 6, 2008) ("Failure to pay a contractual debt where payment is due to be made in Florida is sufficient to satisfy § 48.193(1)[(a)(7)].") (citing *Hartcourt Companies v. Hogue*, 817 So.2d 1067, 1070 (Fla. 5th DCA 2002)).

While the SLA contains no specific requirement that payments be made to ASG's principal place of business in Florida, the Court may nonetheless presume Florida to be a location for payments due.  *See Hartcourt Companies,* 817 So. 2d at 1070 (presuming the payee's place of business as the location for repayments when the contract fails to specify such location).  Thus, because the ASG alleges that Avon failed to make required payments under the SLA, the Court concludes that its claims fall within the reach of Florida Statute § 48.193(1)(a)(7).

**B.     DUE PROCESS**

Once jurisdiction under the long-arm statute has been satisfied, the final analysis centers on the twin due process inquiries of whether "(1) the defendant [has] certain minimum contacts with the forum state, and that (2) the exercise of jurisdiction over the defendant satisfies 'traditional notions of fair play and substantial justice.'" *Sculptchair, Inc.*, 94 F.3d at 626 (11th Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

**1. MINIMUM CONTACTS**

The Eleventh Circuit employs a three-part test to determine whether the minimum contacts requirement is met:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of the laws. Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

*Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (internal citations and quotations omitted).

First, the Court finds that a sufficient amount of Avon's contacts with Florida are directly related to the SLA so as to fall within the bounds of the due process clause. Beyond the allegations of the First Amended Complaint, ASG meets this threshold by presenting an affidavit stating that Avon has solicited services from ASG's Florida office, solicited additional software licenses from ASG's Florida office, negotiated existing license terms with personnel at ASG's Florida office, and has made payments to ASG in Florida. (Doc. 18-1 at 1-2).

Avon attempts to rebut this finding by arguing that its contacts with Florida cannot be related because any breach that actually occurred, happened through the use of ASG software that was physically installed and used in New York.  (Doc. #10 at 6).  Consistent with the Court's findings herein, these naked arguments fail.  Because this controversy turns on Avon's alleged failure to pay required license and maintenance fees for ASG software, and because the Court may presume that those payments were to be submitted to ASG in Florida, it is clear that Avon's contacts with Florida are sufficiently related to ASG's claim.

The next inquiry is whether Avon has purposefully availed itself of the privilege of conducting activities in Florida.  *Vermeulen*, 985 F.2d at 1546.  The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  *Burger King Corp.*, 471 U.S. at 475 (internal quotations and citations omitted).  Thus, purposeful availment can be found where "business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state[.]"  *Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n*, 339 U.S. 643, 647, 70 S. Ct. 927, 929, 94 L. Ed. 1154 (1950).  One such example of purposeful availment is a "direct solicitation by a foreign defendant of [a] business . . . where . . . a continuing relationship . . . [is] contemplated."  *Sea Lift, Inc.*, 792 F.2d at 994.

To this end, where a foreign company purposefully directs its activities toward a forum state, a finding of personal jurisdiction is appropriate for a number of reasons. Notably,

> . . . . where individuals purposefully derive benefit from their
> interstate activities, it may well be unfair to allow them to

> escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.

*Burger King Corp.,* 471 U.S. at 473.  (internal citations and quotations omitted).

The facts of this dispute plainly support a finding that Avon purposefully availed itself of the privilege of conducting business in Florida.  First, ASG alleges that Avon entered into an ongoing licensing contract, the SLA, which governed the relationship between the parties for approximately nine (9) years.  (Doc. #37 at 2-10).  ASG further alleges that Avon breached the SLA by exceeding LPAR usage, and also by using ASG software for the benefit of parties outside of the SLA.  (Doc. #37 at 10).  During the duration of the parties' relationship, ASG alleges that it has maintained its principle place of business in Florida, and on occasion Avon contacted ASG there to request support or obtain license keys for ASG software.  (Doc. 18-1 at 3).  ASG further alleges that Avon has engaged with ASG representatives in Florida to negotiate contractual terms, and where ASG licenses were transferred from Avon's UK affiliate to its American entity. (Doc. #18-1 at 2).  Avon has also made payments to ASG in Florida for usage of licenses and maintenance service.  (Doc. #18-1 at 2).

To be sure, the Eleventh Circuit has found that a choice of law clause that invokes the law of a foreign jurisdiction constitutes an indication that a party did not avail itself of the benefits and protections of Florida law.  *Sea Lift, Inc.,* 792 F.2d at 994.  Although this factor is recognized, it is outweighed by Avon's contacts with ASG in Florida.

Consequently, the Court finds that Avon has intentionally availed itself of the privilege of engaging in business here.

These facts also bear on whether Avon could reasonably expect to be haled into court in Florida.  "When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there . . . . " *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (internal citations and quotations omitted).  Given the nature of Avon's business ties in Florida, including its relationship with ASG as well as other commercial ventures, there is little doubt that it has purposefully availed itself of the privilege of conducting activities in the State. As such, it is unreasonable for Avon to claim that it did not expect to be subject to litigation here.

## 2.  TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

Avon argues that exercising personal jurisdiction over it would offend traditional notions of fair play and substantial justice.  In determining the fairness and reasonableness of a forum's exercise of jurisdiction, a court must consider, among other things, "the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute."  *Licciardello*, 544 F.3d at 1288.

As to Avon's burden, the Supreme Court has been clear that "because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King Corp.*, 471 U.S. at 474 (internal citations omitted).

Against this backdrop, Avon maintains a commercial base of hundreds of representatives in Florida.  (Doc. #18-2 at 1-68).  While Avon's relationship with these representatives does not give rise to general or specific jurisdiction on its own, it does cast a shadow on the argument that Avon would be prejudiced by being forced to litigate in Florida.  Moreover, as is illustrated herein, Avon's ties to ASG in Florida are robust, and their depth further indicates that Avon would not be overtly prejudiced by litigating here.  Finally, an ever-increasing wave of technology relieves, and in some cases obviates, the burdens of transportation and communication that Avon would incur by litigating in Florida.  Thus, the exercise of personal jurisdiction in this matter would not so burden Avon as to offend traditional notions of fair play and substantial justice.

Second, Avon argues that because the SLA "is governed by the laws of England and Wales rather than of Florida, this State lacks an interest in adjudicating this dispute, and there are no fundamental substantive social policies implicated in this case." (Doc. #10 at 7).  That the SLA is governed by foreign laws does not change the fact that ASG's principle place of business is located within Florida.  Given this crucial factor, Florida has a substantial interest in adjudicating damages allegedly inflicted on a Florida business by an out-of-state actor.  *See Sculptchair, Inc.*, 94 F.3d at 632; *see also Burger King Corp.*, 471 U.S. at 473 (1985).  As such, the Court holds that this interest outweighs any indication to the contrary found in the SLA's choice of law provision.

Third, the Court confronts the question of ASG's interest in obtaining convenient and effective relief.  Avon attempts to divert this inquiry by alleging that ASG cannot show that it cannot obtain relief in another court with jurisdiction over Avon, or that it would be inefficient to litigate there.  ASG is not required to present such a showing.  Rather, it is

well established that a Florida plaintiff, such as ASG, has an undeniable interest in litigating in its chosen forum.  *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1358 (11th Cir. 2013); *see also Posner*, 178 F.3d at 1221.

Lastly, it is clear that the interstate judicial system's interest in obtaining a fair and efficient resolution of the issues before the Court are promoted by litigating the claims in Florida.  This interest is served because Florida is where the alleged failure to compensate ASG for excessive LPAR usage occurred, and where several witnesses reside.  *See Morris v. SSE, Inc., 843 F.2d 489, 495 (11th Cir. 1988)*.  Among these witnesses are ASG employees who may testify about the software's functionality, licensing, maintenance, contracts with Avon, and communications with Avon.  (Doc. #18-1 at 2-3).  And, while witnesses and evidence for Avon may exist in New York, the Court finds no indication that the Southern District of New York is in a better position to adjudicate this matter.

In sum, the allegations in the First Amended Complaint support the extension of Florida's long-arm statute over Avon, such that a finding of personal jurisdiction would not offend Avon's due process interests.[5]

Accordingly, it is now

**ORDERED:**

Defendant, Avon Products, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #39) is **DENIED**.

---

[5] As a result of the analysis herein, the Court also finds that pursuant to 28 U.S.C. § 1391(b)(2), venue in the Middle District of Florida is proper because a substantial part of the events giving rise to the claim occurred in the district, namely Avon's alleged failure to properly compensate ASG for its excessive usage of the ASG software.

**DONE** and **ORDERED** in Fort Myers, Florida this 20th day of December, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record